IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BRANDON ISIAH PARKER<br>*Petitioner* | Criminal No. ELH-23-00293<br>Civil No. ELH-25-04128 |

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a post-conviction petition filed by defendant Brandon Parker, pursuant to 28 U.S.C. § 2255. ECF 56 (the "Motion"). In particular, defendant seeks to vacate his conviction for felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), claiming ineffective assistance of defense counsel.

The government opposes the Motion. ECF 60. In support of its opposition, the government submitted the transcripts from defendant's guilty plea proceeding on August 29, 2024 (ECF 60-1) and the sentencing proceeding held on November 5, 2024. ECF 60-2. Defendant did not reply.

No hearing is necessary to resolve the Motion. 28 U.S.C. § 2255(b). For the reasons that follow, I shall deny the Motion.

## I. Factual Background

In an indictment issued on August 22, 2023 (ECF 1), Parker was charged with conspiracy to distribute and possess with intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. § 846, as well as two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *Id.* The conspiracy took place between September 2021 and May 2022. Count 2 concerned a Taurus 709 Slim and multiple rounds of ammunition. Count 3 concerned a Glock 19 9mm firearm, loaded with 15 rounds of ammunition, as well as

approximately 43 rounds of loose ammunition. The conduct referenced in Count 2 and Count 3 occurred on April 7, 2022.

Pursuant to a Plea Agreement (ECF 42), Parker entered a plea of guilty on August 29, 2024, to Count 3 of the Indictment, charging felon in possession of a firearm and ammunition. ECF 41.[1] The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C) ("C Plea"), by which the parties agreed that 57 months of imprisonment is the appropriate disposition. *Id.* ¶ 10.

The Plea Agreement contains a "Stipulation of Facts." *Id.* at 10. According to the factual stipulation, law enforcement obtained authority to wiretap defendant's phones and then intercepted calls in which Parker was discussing drug trafficking and making deals to sell controlled substances to his customers. *Id.* On or about April 7, 2022, law enforcement executed a search warrant at defendant's residence and recovered a Glock 19 9mm firearm bearing serial number RGW475, loaded with 15 rounds, and 30 rounds of ammunition in a Glock 31 extended magazine. *Id.* Parker admitted that, "[a]s of April 7, 2022, Parker had several prior convictions, including the following felony conviction: a June 3, 2019, conviction for possession with intent to distribute controlled substances in Case No. 119136020 (Baltimore City Circuit Court), for which he received a sentence of three years in prison. Parker knew prior to April 7, 2022, that he had been convicted of [a] felony and that he was not permitted to possess a firearm or ammunition." *Id.*

At the Fed. R. Crim. P. 11 plea colloquy, Parker specifically admitted that the facts recounted above are true. ECF 60-1 at 10, 41. Further, he indicated that he had no complaints about his lawyer, and that defense counsel did everything that Parker asked in terms of his representation. *Id.* at 7. Moreover, he agreed and understood that, in general, by pleading guilty,

[1] Curiously, the government opens its brief with the assertion that defendant pleaded guilty on November 7, 2024. ECF 60 at 1.

he was waiving his appellate rights, provided he was sentenced in accordance with the terms of the C Plea, *i.e.*, 57 months of incarceration. *Id.* at 23; *see* ECF 42, ¶ 12.

The Amended Presentence Report (ECF 53, "PSR") reflects that defendant had six prior offenses that each scored one point. *See id.* ¶¶ 30, 31, 32, 33, 34, 36. But, under § 4A1.1(c) of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"), only four points were counted. Two points were assigned for a second degree assault conviction. *Id.*, ¶ 35. Therefore, defendant had a total of six criminal history points, which equates to a criminal history category of III. *Id.* ¶ 39.[2] After deductions for acceptance of responsibility, defendant had a final offense level of 21. *Id.* ¶¶ 22, 23, 24.

At the time, the offense carried a statutory maximum of ten years of imprisonment.[3] Based on an offense level of 21 and a criminal history category of III, the Guidelines called for a period of incarceration ranging from 46 to 57 months. ECF 53, ¶ 74.

Sentencing was held on November 7, 2024. ECF 52. In accordance with the C Plea, the Court sentenced Parker to the agreed upon term of 57 months in prison. ECF 54; ECF 60-2. Parker did not file a direct appeal to the Fourth Circuit. *See* Docket.

Parker's Motion is dated December 5, 2025. ECF 56. It was docketed on December 12, 2025. *Id.*[4] As noted, he alleges ineffective assistance of counsel. Defendant complains that his lawyer failed to raise that he "never serve [sic] a sentence over one year," thereby rendering his conviction invalid under 18 U.S.C. § 922(g)(1). ECF 56 at 4. He also claims his lawyer was

---

[2] Defendant was under a criminal justice sentence when the offense occurred. But, no additional criminal history points were added. *See* U.S.S.G. § 4A1.1(e).

[3] The maximum penalty has since been increased to fifteen years of imprisonment.

[4] Because the Motion is dated December 5, 2025, the government has used that date as the operative filing date, pursuant to *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See* ECF 60 at 4 n.1.

ineffective for "failing to file Notice of Appeal under *Roe v. Flores-Ortega* and *Garza v. Idaho*." *Id.* He also faults his counsel for not averring that he had a criminal history category of II, even though the presentence report indicated he had a criminal history category of III. *Id.* at 5. Further, Parker complains because his counsel did not delay the sentencing until November 2025, so that defendant could take advantage of new sentencing guideline factors, which he claims might have benefited him. *Id.* at 6.

Moreover, defendant contends that his Motion is timely under *Hunter v. United States*, 608 U.S. 713 (2026). *Id.* at 11. He asserts that he "meet due diligents" [sic] given "re-occurring lockdowns" and asserts that the filing deadline should be tolled for him. *Id.*

Additional facts are included, *infra*.

## I. Legal Standard

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such a sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Relief under § 2255 is meant to remedy fundamental constitutional, jurisdictional, or other errors. The petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the

entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting Hill, 368 U.S. at 428). The defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

Section 28 U.S.C. § 2255(f) imposes a one-year period of limitations, within which a petitioner must file a post-conviction motion. This one-year period begins on the latest of the following dates: (1) the date on which the petitioner's judgment became final; (2) the date on which any unconstitutional, government-created impediment preventing the petitioner from filing this motion was lifted; (3) the date on which a newly asserted right was recognized by the Supreme Court and made retroactive on collateral review; or (4) the date on which the facts supporting the petitioner's claim for relief "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4); *see*, *e.g.*, *United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 226 (2023); *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017).

The scope of collateral review under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). "Accordingly, at least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Foster*, 578 U.S. at 519 (citing, *inter alia*, *United States v. Roane*, 378 F.3d 382, 397 n.7 (4th Cir. 2006)). Indeed, "it is well-settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United*

*States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)) (ellipsis in *Dyess*); *see United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018) (same).

Failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (quoting *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Green*, 67 F.4th at 666; *United States v. McKinney*, 60 F.4th 188, 193 (4th Cir. 2023).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see also Reed*, 512 U.S. at 354 (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Carrier*, 477 U.S. at 496; *Frady*, 456 U.S. at 167-68. In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded his counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see*

*Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel").

Notably, the alleged error cannot simply create a possibility of prejudice; the petitioner must show "*actual* and substantial disadvantage" that "infect[s]" the petitioner's "entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). To illustrate, a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause. *Reed v. Ross*, 468 U.S. 1, 16 (1984); *see McKinney*, 60 F.4th at 193-94. But, in the absence of a showing of cause, prejudice does not support relief of a procedural default. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

As indicated, defendant's Plea Agreement contains an appellate waiver. ECF 42, ¶ 12. But, defendant does not assert that this was the basis for his failure to note a direct appeal. In any event, "no appeal waiver serves as an absolute bar to all appellate claims." *Garza v. Idaho*, 586 U.S. 232, 238 (2019). Moreover, "an agreement not to appeal a sentence is unenforceable when it would result in a miscarriage of justice . . . ." *Hunter*, 608 U.S. at 717; *see McKinney*, 60 F.4th at 192; *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

To show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted;

this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623; *Green*, 67 F.4th at 671. The petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

The Fourth Circuit has said: "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

**B.**

As indicated, defendant entered a plea of guilty to a violation of 18 U.S.C. § 922(g)(1), *i.e.*, felon in possession of firearms. In the context of a post-conviction motion, a plea of guilty is significant.

A guilty plea represents an admission by a defendant that "he actually committed the crime" in issue and that "he is pleading guilty because he is guilty." *United States v. Hyde*, 520 U.S. 670, 676 (1997). A guilty plea also constitutes a "waiver of [a defendant's] right to trial

before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970). It is "a grave and solemn act . . . ." *Id.*; *see also Bousley*, 523 U.S. at 618.

Thus, to be valid, the plea of guilty must reflect an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In order for a guilty plea to be valid, it must be voluntary. *Brady*, 397 U.S. at 748. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see Bradshall v. Stumpf*, 545 U.S. 175, 183 (2005) (same). Once a guilty plea is entered, however, there is "a strong presumption that the plea is final and binding." *United States v. Lambey*, 974 F.3d 1389, 1394 (4th Cir. 1992).

A "valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary guilty plea." *Class v. United States*, 583 U.S. 174, 183 (2018); *see United States v. Pittman*, 125 F.4th 527, 533 (4th Cir. 2025) (stating that "[a] criminal defendant who pleads guilty waives any argument that the statute of conviction does not cover that defendant's conduct."). Indeed, a defendant is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.,* 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Thus, "a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'" *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74); *see United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1992) (stating that defendant's statements at the plea hearing are "strong evidence of the voluntariness of his plea.").

Conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false." *Lemaster*, 403 F.3d at 222. As the Fourth Circuit has explained, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Id.*; *see also Blackledge,* 431 U.S. at 74; *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004); *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003).

When, as here, a judgment of conviction based upon a guilty plea is later subjected to a collateral attack, such as by a § 2255 motion, the court's inquiry concerning the validity of the guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). A plea cannot be "voluntary in the sense that it constituted an intelligent admission . . . unless respondent received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Marshall v. Lonberger*, 459 U.S. 422 (1983), the Court recognized that "'it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.'" *Id.* at 436 (1983) (quoting *Henderson*, 426 U.S. at 647) (internal quotations omitted).

The Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pled guilty "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (2019); *cf. Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse,

from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 927 F.3d at 816. In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*; *see United States v. Perdue*, 110 F.4th 662, 670 (4th Cir. 2024).

In particular, the defendant "must point to evidence that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.*; *see United States v. Perdue*, 110 F.4th 662, 670 (4th Cir. 2024). In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815; *see Garrett Co. v. DePasquale*, 443 U.S. 368, 382 n.10 (1979); *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024). Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22; ECF 45-1 at 38-39.

Here, defendant does not "point to evidence" that undermines his knowing and voluntary decision to plead guilty based on a complete "understanding of the implications of pleading guilty . . ." *Perdue*, 110 F.4th at 670.

In the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815; *see Garrett Co.*, 443 U.S. at 382 n.10; *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024). Therefore, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* And, the "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 817; *see Lemaster*, 403 F.3d at 221-22.

**C.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel "at all 'critical states of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citation and quotation marks omitted); *see Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *Bobby v. Van Hook*, 558 U.S. 417 (2009) (per curiam); *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). The plea bargaining process is regarded as "an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). Therefore, the Sixth Amendment right to counsel extends to plea-bargaining negotiations and "the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *see Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *McMann v. Richardson*, 397 U.S. 749, 771 (1970); *United States v. Yelizarov*, 140 F.4th 597, 604 (4th Cir. 2025); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *United States v. Hall*, 771 App'x 226, 227 (4th Cir. 2019) (per curiam).

Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Frye*, 566 U.S. 133; *Lafler*, 566 U.S. 156; *Padilla v. Kentucky*, 559 U.S. 356 (2010). Failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504-06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged framework set forth in *Strickland*, 466 U.S. at 687–88. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. McNeil*, 126 F.4th 935, 942 (2025); *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *United States v. Akande*, 956 F.3d 257, 260 (4th Cir. 2020); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). The petitioner must prove his claim by a preponderance of the evidence. *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

First, the petitioner must show that counsel's performance was constitutionally deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Premo v. Moore*, 562 U.S. 115, 121 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *McNeil*, 126 F.4th at 942; *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Dyess*, 730 F.3d at 361; *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first *Strickland* prong, known as the "performance prong," relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Richter*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207-08; *Powell*,

850 F.3d at 149; *United States v. Richardson*, 820 F. App'x 225, 226 (4th Cir. 2020) (per curiam). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The "first prong sets a high bar." *Buck*, 580 U.S. at 118; *see also Powell*, 850 F.3d at 149. Indeed, it is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). As the Supreme Court stated in *Padilla*, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task."

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). "Mere deviation from best practices will not do." *United States v. Powell*, 134 F.4th 222, 228 (4th Cir. 2025). Moreover, "trial lawyers must have wide latitude in making tactical decisions." *Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998); *see Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Therefore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 580 U.S. at 118 (citation omitted); *see Mayhew*, 995 F.3d at 176.

In other words, "'*Strickland* does not guarantee perfect representation, only a reasonably competent attorney.'" *Cox v. Warden*, 102 F.4th 663, 675 (4th Cir. 2024) (quoting *Harrington*, 562 U.S. at 110) (cleaned up). Moreover, "the *Strickland* standard must be applied with scrupulous care," and "the standard of judging counsel's representation is a most deferential one." *Richter*,

562 U.S. at 105; *see Strickland*, 466 U.S. at 689; *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). The *Strickland* Court admonished, 466 U.S. at 689: "It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *See also Premo*, 562 U.S. at 122; *Bell v. Cone*, 535 U.S. 685 (2002).

The *Strickland* Court explained, 466 U.S. at 689, that, unlike "a later reviewing court," it is the boots-on-the-ground trial lawyer who "knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Thus, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (S. Ct. 2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

A claim of ineffective assistance is evaluated in light of "the strength of case law as it existed at the time of allegedly deficient representation." *Palacios*, 982 F.3d at 924; *see Carthorne*, 878 F.3d at 466. In other words, "[t]o avoid the distorting effects of hindsight, claims under *Strickland's* performance prong are 'evaluated in light of the available authority'" at the relevant time. *Morris*, 917 F.3d at 823 (citation omitted). To be sure, counsel "are obliged to make [] argument[s] that [are] sufficiently foreshadowed in existing case law," but counsel is not deficient "for failing to predict" changes in the law. *Id.* at 824 (alterations in *Morris*; internal quotation marks omitted). After all, "[w]ith the benefit of hindsight, improvements could be made to almost any representation." *Powell*, 134 F.4th at 228.

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Yelizarov*, 140 F.4th at 604. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 163 (2024) (death penalty case).

A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Moreover, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

**D.**

A self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir.

2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *see United States v. McNeil*, 126 F.4th 935, 942 (4th Cir. 2025); *United States v. Sutherland*, 103 F.4th 200, 207 (4th Cir. 2024); *White*, 366 F.3d at 302. But, if the factual record is "murky," a hearing may be required. *United States v. Hashimi*, 110 F.4th 621, 631-32 (4th Cir. 2024).

Generally, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim[.]" *Mayhew*, 995 F.3d at 176-77; *see United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021) (requiring evidentiary hearing to clarify evidence as to counsel's "strategic choice"). If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *Akande*, 956 F.3d at 261; *see United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

Parker asserts that he is "entitled to an evidentiary hearing." ECF 56 at 12. However, credibility of witnesses is not in issue. Nor are the material facts in dispute. Therefore, no hearing is necessary.

## III. Discussion

### A. Timeliness

As stated earlier, under 28 U.S.C. § 2255(f), "[a] 1-year period of limitation shall apply to a motion under this section." The limitation period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

The government contends that Parker's Motion was untimely filed. ECF 60 at 4-6. Therefore, the government maintains that the Motion must be dismissed. *Id.* at 5.

As detailed above, Parker was sentenced on November 5, 2024 (ECF 52) and the Judgment was entered on November 7, 2024. ECF 54.[5] Parker did not file a direct appeal to the Fourth Circuit. *See* Docket. As such, his conviction became final when the time to file an appeal expired under Fed. R. App. P. 4(b)(1)(A). That rule provides that, in a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: 1) the entry of either the judgment or the order being appealed; or 2) the filing of the government's notice of appeal. The filing deadline was November 21, 2024.

Accordingly, the Motion, even if deemed filed on December 5, 2025, *i.e.*, the date Parker signed it, was untimely under § 2255(f)(1). This is because it was filed more than one year after defendant's conviction became final. Moreover, Parker does not present any arguments under 28 U.S.C. §§ 2255(f)(2), (f)(3), or (f)(4), set forth above, which would render those alternative time periods available to him.

[5] Curiously, the government asserts that sentencing took place on November 8, 2024. ECF 60 at 17. As noted, sentencing took place on November 5, 2024. ECF 52. The Judgment was signed on November 7, 2024 (ECF 54) and it was docketed on that date. *Id.*

To be sure, Parker seems to suggest that he should be excused from the requirements in § 2255(f), due to institutional lockdowns. *See* ECF 56 at 11. But, as the government indicates, defendant's reasons "are inadequate to relieve him of congressionally-imposed deadlines." ECF 60 at 5.

Parker makes only a vague assertion about "lockdowns" during his imprisonment. ECF 56 at 11. But, he fails to provide any detail about when such lockdowns occurred, how long they lasted, or why they prevented him from making a timely filing. As such, the government asserts that this claim must be rejected. *See* ECF 60 at 6 (citing *Akins v. United States*, 204 F.3d 1086, 1090 (11th Cir. 2000) (rejecting claim that federal prisoner was entitled to tolling under 28 U.S.C. § 2255(f) because he failed to demonstrate how prison lockdown prevented him from accessing the law library and precluded his compliance with filing deadlines); *Ventura v. United States*, RDB-10-00770, 2019 WL 6255172, at *3 (D. Md. Nov. 22, 2019) (same)).

Under *Holland v. Florida*, 560 U.S. 631 (2010), "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (applying equitable tolling to one-year limitation period in 28 U.S.C. § 2255) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)) (additional citations omitted); *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Notably, a petitioner need show only "reasonable diligence." There is no requirement for "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation omitted). But, defendant has failed to "explain how he exercised diligence during the original limitations period." *Smith v. Warden of FCI Bennettsville*, JRR-22-3340, 2023 WL 3251411, at *5 (D. Md. May 4, 2023).

In my view, defendant's explanation does not satisfy the criteria for tolling the one-year clock. For example, he does not claim that the government or the Bureau of Prisons impeded his ability to file a timely petition, § 2255(f)(2); he does not assert that the Supreme Court recognized a new, retroactive right, § 2255(f)(3); Parker does not allege that he discovered new facts through due diligence, § 2255(f)(4); defendant does not contend that he tried to access legal materials that were not provided, nor does he describe his effort to submit his Motion within the time required. Moreover, even for a defendant without legal counsel, "ignorance of the law is not a basis for equitable tolling." *Sosa*, 364 F.3d at 512.

In sum, the Motion is time barred and subject to dismissal on this basis. Nevertheless, I shall assume, *arguendo*, that the Motion is timely. Therefore, I turn to the merits.

**B. The Merits**

"The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 687-91).

I have previously reviewed, at length, the parameters of a claim of ineffective assistance of counsel. In sum, a defendant bears the burden to demonstrate: "(1) that his attorney's performance fell below an objective standard of reasonableness and (2) that he experienced prejudice as a result, meaning that there exists a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Dyess*, 730 F.3d at 361 (citing Strickland) (internal quotations omitted).

Parker essentially makes three claims of ineffective assistance of counsel. First, he takes issue with his counsel's alleged failure to object to the fact that Parker "never serve[d] a sentence over one year in violation of 18 USC § 922(g)(1)." ECF 56 at 4. Second, he claims his counsel failed to object to his criminal history category of III, when, in his view, it is II. *Id.* at 5. Third, he faults his counsel for not seeking to delay the sentencing until November 1, 2025, when new amendments to the Guidelines took effect. *Id.* at 7.

**1.**

Defendant seems to suggest that he was unlawfully convicted as a felon in possession because "he never serve[d] over one year sentence," and he claims "this should have been raise[d] on direct appeal." ECF 56 at 4. The government characterizes the assertion as a "Rehaif Claim," pursuant to *Rehaif v. United States*, 588 U.S. 225 (2019). ECF 60 at 7. It "surmises" that defendant is attempting to argue that he did not have "a qualifying conviction" for an offense under 18 U.S.C. § 922(g)(1). *Id.* at 7, 8.

For starters, defendant disputes that he qualified for a conviction under § 922(g)(1). In doing so, defendant seeks to contradict his admissions at his guilty plea proceeding on August 29, 2024. At that proceeding, Parker took an oath to tell the truth. ECF 60-1 at 2. During the Rule 11 colloquy, the Court reviewed with defendant his attestations in the Plea Agreement, indicating he had carefully reviewed the Factual Stipulation, did not wish to change it, and was satisfied with the services of his lawyer. *Id.* at 8, 9, 10. Moreover, the Court explained that, by signing the stipulation of facts, defendant agreed that the government would prove those facts at a trial, beyond

a reasonable doubt. *Id.* at 10. Defendant stated that he understood. *Id.* at 10-11. In addition, the Court reviewed with the defendant the elements of the offense at issue. *Id.* at 12.

The government summarized the facts of the case. *Id.* at 38-40. Among other statements, the prosecutor said that on June 3, 2019, defendant was convicted in the Circuit Court for Baltimore City, of the offense of possession with intent to distribute controlled substances, for which he was sentenced to three years of imprisonment. *Id.* at 40. The government also stated, in part, *id.*: "Mr. Parker knew prior to April 7, 2022 that he had been convicted of a felony and that he was not permitted to possess a firearm or ammunition."

The Court asked defendant if the government's factual summary was accurate. *Id.* at 40-41. Defendant agreed that it was correct. *Id.* at 41, 44. The defendant also admitted that he committed the crime summarized by the government. *Id.* at 41, 44. And, he affirmed that he was pleading guilty freely and voluntarily, because he is guilty. *Id.* at 44. Thereafter, the Court found that defendant's plea of guilty was informed, knowing, and voluntary. *Id.* at 45.

At sentencing on November 5, 2024, defendant had no objection to the content of the presentence report (ECF 45). *See* ECF 60-2 at 6. And, as amended, the presentence report (ECF 53) reflects that defendant had two prior felony drug convictions. *See id.* ¶¶ 33, 36. For the conviction in June 2019, defendant was sentenced to three years of imprisonment, although most of it was suspended. *Id.* ¶ 33. Defendant also had a drug conviction in June 2023, for which he was sentenced to seven years of imprisonment, most of which was suspended. *Id.*¶ 36.[6]

[6] The 2023 conviction was omitted from the original PSR. *See* ECF 45. The government so noted in its sentencing memorandum. *See* ECF 49 at 6. The Amended PSR includes the 2023 conviction. ECF 53, ¶ 36. But, the additional offense did not affect defendant's criminal history category. *Id.*

In *Yelizarov*, 140 F.4th 597, the Court said, *id.* at 605: "Generally, a court should dismiss a claim in a § 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." *See also United States v. McNeil*, 126 F.4th 935, 946 (4th Cir. 2025); *Lemaster*, 403 F.3d at 221-22. That is what defendant attempts to do here by repudiating his record and/or by the suggestion that he was unaware of his prior record.

Defendant appears to misunderstand what is required for a conviction under 18 U.SC. § 922(g)(1). The law does not mandate that defendant *serve* more than a year in prison. Rather, § 922(g)(1) requires only that defendant have a prior conviction for a crime "punishable" by more than a year in prison.

Twice, defendant was convicted of drug offenses punishable by imprisonment for a term exceeding one year. Whether he served any time for those offenses is of no legal significance. *See*, *e.g.*, *Johnson v. United States*, Civil No. 6:12-cv-00632, Criminal No. 6:09-cr-00205, 2013 WL 6633953, at *3 (S.D. W.Va. Dec. 17, 2013). Defendant was also convicted twice of second degree assault. ECF 53, ¶¶ 29, 35. And, second-degree assault in Maryland is punishable by a term of imprisonment of up to ten years. *See* Maryland Code (2021 Repl. Vol.), Crim. Law Art. § 3-203(b). In addition, defendant was sentenced to one year and one day in prison for breaking and entering into a motor vehicle. ECF 53, ¶ 30; *see Heard v. United States*, Criminal No. JRR-cr-00900, Civil No. JRR-20-cv-02175, 2024 WL 3638021 (D. Md. Aug. 2, 2024) (rejecting *Rehaif*-related ineffective assistance claim because PSR demonstrated that defendant had qualifying prior felony conviction and therefore he could not establish *Strickland* prejudice).

In short, the record reflects that, at the relevant time, defendant had already been convicted of multiple felony offenses that were punishable by imprisonment for more than a year. And, as

the factual stipulation reflects, he knew of his 2019 felony drug conviction. Therefore, it was illegal for him to possess a firearm and ammunition on April 7, 2022.

At the close of sentencing, the Court advised defendant that he had 14 days from the entry of the Judgment to note an appeal. ECF 60-2 at 28. No appeal was filed. Defendant now seems to complain that his lawyer's performance was ineffective because he did not note an appeal. ECF 56 at 4. Defendant also seems to imply that an appeal would have concerned the inadequacy of his prior record. *Id.*

Notably, defendant never asserts that, despite the appellate waiver in his Plea Agreement (ECF 42, ¶ 12), he directed his lawyer to file an appeal. *See Garza*, 586 U.S. at 241 (stating that "filing a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative"); *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (holding that prejudice should be presumed when an attorney's deficient performance precludes an appeal); *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007) (stating that attorney was ineffective for failing to follow unequivocal instruction); accord *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993).

In any event, defendant would not have succeeded in an appeal based on *Rehaif*, because he knew of his prior conviction. And, as the government notes, an appeal could have led to a claim by the government that defendant was in breach of the Plea Agreement. ECF 60 at 12; *see Garza*, 586 U.S. at 238 (noting that a defendant subject to an appellate waiver must "rais[e] claims beyond the waiver's scope"); *United States v. Courtade*, 929 F.3d 186, 194-95 (4th Cir.2019) (affirming denial of § 2255 motion because no rational defendant would have appealed and risked the loss of a favorable plea agreement where there was little to no chance of success); *United States v. Eubanks*, 72 F.3d 128 (4th Cir. 1995) (per curiam) ("Because the appeal he wanted to file was

meritless, Eubanks did not receive ineffective assistance of counsel when his counsel allegedly failed to preserve and protect his right to appeal.”).

**2.**

Parker's second claim concerns his counsel's alleged failure to challenge defendant's criminal history category of III in the PSR. ECF 56 at 5. Parker appears to contend that he “never serve[d] any time for PSR para. ¶ 30-33, 35 which are now overstated under 4A1.1(c).” *Id.* As such, he claims he should have been a “CAT. SCORE II AND NOT CAT.III.” *Id.* This claim fails under both prongs of *Strickland*.

Parker cannot establish deficient performance by his counsel in regard to this issue. The PSR correctly calculated Parker's criminal history score. *See* ECF 45; *see also* ECF 53, ¶¶ 35, 37-39. Specifically, Parker was deemed to have six criminal history points, of which four were counted. *Id.* It is clear that the criminal history points were properly assigned, and therefore his criminal history category is accurate.

To be sure, most of defendant's sentences were suspended. For example, in his drug trafficking conspiracy conviction, defendant was sentenced to three years in prison, of which two years, 10 months, and 21 days were suspended. ECF 45, ¶ 33. But, this also demonstrates that Parker did, in fact, serve part of that sentence. And, under U.S.S.G. § 4A1.1(c), one criminal history point is added for any sentence where the defendant does not serve more than 60 days in prison. So, pursuant to a straightforward calculation under the Guidelines, Parker was properly deemed to have a criminal history category of III.

Moreover, under U.S.S.G. § 4A1.2(a)(3), “A conviction for which the imposition or execution of sentence was totally suspended or stayed shall be counted as a prior sentence under

§4A1.1(c)." Therefore, even if defendant' sentences were fully suspended, they would count for criminal history calculation purposes.

In any event, even if Parker had a criminal history category of II, it would not have made any difference. This is because the parties reached a Plea Agreement under Rule 11(c)(1)(C), and the Court agreed to be bound by it. The Fourth Circuit has consistently held that where a sentence is imposed pursuant to a Rule 11(c)(1)(C) plea agreement, the sentence is contractual and not based on the Guidelines. *United States v. Williams*, 811 F.3d 621, 623 (4th Cir. 2016); *United States v. Febrez*, 391 Fed. Appx. 329, 331 (4th Cir. 2010). As a result, Parker cannot claim that any prejudice resulted from the Guidelines calculation. Whether defendant was a criminal history II or III was immaterial to the outcome.

**C.**

Last, Parker claims that his lawyer should have sought to delay the sentencing pending upcoming changes in the Guidelines. Specifically, Parker contends that defense counsel was "ineffective for not raising new revise[d] Amendments 829, 828, and 826 from November 1, 2025 . . . under uncharge[d] conduct § 2K1.1(b)(6)(B) or Youthful Offenders priors in para 30-33" and that he should have held sentencing "in abeyance until Nov. 1, 2025 revise[d] guidelines came down." ECF 56 at 7. The government asserts, ECF 60 at 17: "This claim fails under both prongs of *Strickland*."

The claim lacks merit. The changes of concern were effective on November 1, 2024. And, defendant was sentenced on November 5, 2024. ECF 52. Therefore, Amendments 826, 828, and 829 were operative.[7]

[7] For the reasons stated by the government, the amendments were not applicable to defendant. ECF 60 at 18.

## IV. Conclusion

For the reasons stated above, I shall deny the Motion.

## V. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post-conviction claim. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *Hadden*, 475 F.3d at 659. In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDonald*, 529 U.S. 473, 484 (2000).

In my view, defendant has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[8]

An Order follows.

---

[8] Although this Court denies a COA, this ruling does not preclude Parker from seeking a COA from the appropriate appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.

Date: November 18, 2026

/s/
Ellen L. Hollander
United States District Court